Case 2:23-cv-00103-MKD    ECF No. 1    filed 04/17/23    PageID.1    Page 1 of 15

MATTHEW Z. CROTTY
MATTHEW A. MENSIK
Riverside Law Group, PLLC
905 West Riverside, Suite 404
Spokane, WA 99201-0300
Telephone: 509.850.7011

Attorneys for Plaintiff

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| ROLANDO HERNANDEZ, | NO. |
| Plaintiff, | COMPLAINT AND DEMAND FOR TRIAL BY JURY |
| v. | |
| THE CITY OF OTHELLO, WASHINGTON, | **EXEMPT FROM FILING FEES UNDER 38 U.S.C. § 4323(h)(1)** |
| Defendant. | |

## I.    PARTIES AND JURISDICTION

1. Defendant, City of Othello, Washington (City"), is a municipality that is located in the Eastern District of Washington. It employed Plaintiff at all times relevant to this lawsuit.

2. Plaintiff, Rolando Hernandez, is a veteran of numerous combat deployments throughout the Middle East. At all relevant times to this lawsuit Mr.

COMPLAINT AND DEMAND FOR JURY TRIAL- 1

Hernandez was a Non-Commissioned Officer in the Washington Army National Guard and resided in Moses Lake, Washington.

3. All acts complained of occurred within the Eastern District of Washington.

4. The Federal Court for the Eastern District of Washington has personal jurisdiction over the parties and subject matter jurisdiction for the claims in this complaint pursuant to 38 U.S.C. § 4323(b), 28 U.S.C. § 1331, 28 U.S.C. § 1367(a).

5. Venue is proper in the Eastern District of Washington under 38 U.S.C. § 4323(c) and 28 U.S.C. § 1391(b) because the acts and omissions complained herein occurred in the District and Defendant conducts business in this District.

6. The administrative perquisites necessary to file this lawsuit have been satisfied. Regarding Mr. Hernandez's Title VII retaliation claim, Mr. Hernandez timely filed a charge of discrimination with the EEOC on January 18, 2023, received a right to sue letter from the EEOC on March 3, 2023, and has filed his lawsuit within 90 days of receipt of the right to sue letter. Regarding Mr. Hernandez's Washington Law Against Discrimination (WLAD) claims against the City, Mr. Hernandez served the City with a Notice of Tort Claim on February 9, 2023, and sixty days have elapsed since service of the Tort Claim.

COMPLAINT AND DEMAND FOR JURY TRIAL- 2

### III.    FACTS

7.    Mr. Hernandez grew up in Othello. As a teenager he worked in the farm fields surrounding the community. After graduating high school, he obtained a Criminal Justice and Sociology Degree from Washington State University. Mr. Hernandez then enlisted in the Army. While in the active-duty Army he served in Iraq and Afghanistan as an Airborne Infantryman. After completing his active-duty military service he joined the Washington Army National Guard.

8.    The City first hired Mr. Hernandez as a reserve police officer in September 2011 wherein Mr. Hernandez worked until September 2013. In September 2013 Mr. Hernandez left the Othello Police Department on good terms so as to take a higher paying job at the Grand Coulee Dam. The Othello Police Department re-hired Mr. Hernandez on August 8, 2016, to work as a police officer.

9.    Up until complaining about sexual harassment (more on that below), Mr. Hernandez had never been in any sort of workplace trouble before. As a police officer with the City he was given the Chief's coin for excellence twice, top DUI enforcer in the department twice, recommended for lifesaver award and was a defensive tactics instructor and a Field Training Officer, responsible for training all new officers fresh out of the police academy. All of his evaluations that occurred before he complained of sexual harassment were at the highest marks.

COMPLAINT AND DEMAND FOR JURY TRIAL- 3

10. Mr. Hernandez was a member of the Washington Army National Guard during his employment with the City.

11. The Army National Guard mobilized Mr. Hernandez to serve in the Ukraine from February 2021 through January 2022.

12. Sometime in the January 2021 or February 2021 timeframe a meeting took place. Mr. Hernandez was present at that meeting as was Dave Simmons, the Teamsters Union representative. At that meeting there was discussion about a Sergeant position coming open.

13. During the March 2021 timeframe another department meeting occurred. Although Mr. Hernandez was mobilized with the military (but had yet to head overseas), he was able to attend virtually. At that meeting the Sergeant's position came up and City of Othello Police Chief Phil Schneck stated he was in no hurry to hire and wanted to pick the right person for the position.

14. Mr. Hernandez subsequently deployed to Ukraine where his internet service as spotty.

15. In September 2021 (an unbeknownst to Mr. Hernandez) the City opened the Sergeant position.

16. Months later Mr. Hernandez learned that Seth Carlson and Jamie Mendoza were selected for Sergeant. Mr. Hernandez also learned that Steven Perez was also offered a Sergeant position but declined it so he could stay as a detective.

COMPLAINT AND DEMAND FOR JURY TRIAL- 4

17. At the end of November 2021, a co-worker contacted Mr. Hernandez via WhatsApp and asked if he was interested in the School Resource Officer (SRO) position. Mr. Hernandez found it odd that the department could contact him via WhatsApp about the SRO position but not about the Sergeant opening especially because the Union (Simmons) and Chief knew Mr. Hernandez was interested in the position.

18. In early to mid-January 2022 Mr. Hernandez reached out to Mr. Simmons and asked if there was anything he could do to compete for the Sergeant position given the fact that he was deployed when the interviewing happened. Mr. Simmons said there was nothing he could do.

19. Mr. Hernandez returned to work at the Othello Police Department in mid-January 2022 and observed additional (more on that below) concerning behavior regarding Mr. Carlson's interactions with women in the workplace.

20. On or around Jan 29, 2022, Mr. Hernandez made a formal complaint to Chief Schenck regarding Mr. Carlson. This formal complaint included allegations that Mr. Carlson (a) inappropriately and without permission contacted Mr. Hernandez's sister and girlfriend on different occasions (b) had sexual harassment issues at his prior employer, Wenatchee PD (c) (most recently – January 2022) stared at a co-worker's (Evelyn Miron) butt and (d) made other inappropriate sexual remarks.

COMPLAINT AND DEMAND FOR JURY TRIAL- 5

21. On March 11, 2022, Hernandez and a co-worker, Isaiah Suarez had to physically restrain and arrest a subject. Although the subject made no excessive force complaint and was not injured, Mr. Hernandez and Mr. Suarez filled out a use of force report (per process) and gave it to Claudio Garza, a supervisor. A few days later Mr. Garza told Mr. Hernandez the Chief was going to talk to Mr. Hernandez and Mr. Suarez about what happened, but it, per the Chief, "wouldn't be an issue." Customarily, per Mr. Hernandez's former supervisor (Sgt Josh Silva) if management has a problem with the use of force the issue is addressed in a timely matter.

22. Either on March 14 or March 21, 2022, Mr. Hernandez spoke with the Chief in his office and told him he needed to address the sexual harassment issues in the department. Chief Schneck said there "wasn't any." Chief Schneck became upset. The reason Mr. Hernandez (again) mentioned the sexual harassment issues is because of the Sgt Carlson issue (described above) plus Chief Schneck having told Mr. Hernandez previously he wanted Mr. Hernandez to be the School Resource Officer because "some of my officers could not keep their dick in their pants." Mr. Hernandez brought up instances of an Othello Police Department officer having a scantily clad women ride along with him but hiding the ride-along paperwork as well as the fact that Mr. Carlson improperly tried to contact Sgt Mendoza's wife just like he contacted Mr. Hernandez's girlfriend and sister. It became apparent that

COMPLAINT AND DEMAND FOR JURY TRIAL- 6

Chief Schneck was not happy that Mr. Hernandez was bringing up the topic of what Mr. Hernandez understood to be sexual harassment.

23. On March 31, 2022, Mr. Hernandez learned an internal investigation had been created (on March 31, 2022) about the March 11, 2022 incident - - - the incident that the suspect never complained about and the Chief said "wasn't an issue."

24. Mr. Hernandez later spoke with Mr. Garza about the use of Force incident who, in turn, expressed shock that it had become an internal investigation. Mr. Garza reiterated that he said that the Chief was just going to talk with Mr. Hernandez and the other officer regarding the issue.

25. Mr. Hernandez subsequently received the internal investigation use of force paperwork where he was equally shocked to learn that the paperwork was already marked "sustained" as to Mr. Hernandez and the use of force allegation. However a short time later Mr. Hernandez received, seemingly out of the blue, an email from Assistant Chief Rehamue with the "sustained" mark removed. However, as will be shown below, this was only temporarily.

26. Shortly thereafter Mr. Hernandez would learn that Mr. Garza and Sgt Tomas Solano (Adams County Sheriff) were not interviewed regarding the internal use of force investigation. Mr. Hernandez found this strange because Mr. Solano told Mr. Hernandez that when he (Solano) arrived on the scene he did not see

COMPLAINT AND DEMAND FOR JURY TRIAL- 7

anything wrong with Mr. Hernandez's use of force. Mr. Carlson was, however, interviewed even though he wasn't at the March 11th incident.

27. Around this time (March – April 2022 or thereabouts) Mr. Hernandez learned that Chief Schneck was asking the acting Sergeant, Claudio Garza, if Mr. Hernandez was "the cancer at the department."

28. Mr. Hernandez also learned, via Dispatcher Maria Montalvo, that the assistant chief, David Rahaume, was going through the file cabinet and looking specifically at Mr. Hernandez's reports. And Valerie Lolkus, another Dispatcher, also let Mr. Hernandez know that Sgt McFarlane did not like Mr. Hernandez anymore. Mr. Hernandez understood Mr. McFarlane's reputation to be of one that is against an officer telling on another officer.

29. On or around April 6, 2022, Mr. Hernandez received his performance evaluation. Unlike every other evaluation he'd had while employed with the City, this evaluation was of minimal standards. This evaluation was also completed by the Assistant Chief, as opposed to Mr. Hernandez's supervisor, Mr. Garza.

30. On April 6, 2022, Mr. Hernandez received the outcome of the formal complaint that he filed in January 2023. Not only was Mr. Carlson was cleared of all wrongdoing, but the investigation report went on to insinuate Mr. Hernandez may or may not have made up the story. After reviewing the summary of the report, Mr. Hernandez found that his sister and his girlfriend were never interviewed and

COMPLAINT AND DEMAND FOR JURY TRIAL- 8

the Chief personally interviewed Mr. Carlson even though the Moses Lake Police Department conducted other aspects of the investigation.

31. After receiving the mediocre performance evaluation, the outcome of the investigation that insinuated he lied about the Carlson allegations, and having a pending internal investigation (which first came to Mr. Hernandez as already marked "sustained"), Mr. Hernandez assessed that his career at the Othello Police Department was effectively over. In calling out sexual harassment by a fellow officer Mr. Hernandez had betrayed the Thin Blue Line and, from prior examples, knew Chief Schneck would likely try to find a reason to fire him.

32. A few weeks after leaving the department Mr. Hernandez learned that the use of force had (once again) been "sustained."

33. A few months after leaving the department Mr. Hernandez learned that Chief Schneck (or someone acting at Schneck's direction) initiated the process that caused Mr. Hernandez to be placed on the "Brady list" for making what the City/Schneck claimed was a false allegation about Mr. Carlson being a sexual harasser.

34. The "Brady list" is short hand for a U.S. Supreme Court case that required prosecutors to disclose sustained incidents of officer misconduct (like lying under oath, falsifying reports, tampering with evidence) to defense attorneys.

COMPLAINT AND DEMAND FOR JURY TRIAL- 9

35. Since Mr. Hernandez is on the Brady list he cannot work in law enforcement. And since his law enforcement career is over he now works a job that pays less in benefits.

## IV.  CAUSES OF ACTION

**(CAUSE OF ACTION NO. 1 – VIOLATION OF 42 U.S.C. § 2000E-3(A) - RETALIATION)**

36. Under Title VII of the Civil Rights Act of 1964 it is an unlawful practice for an employer to retaliate against an employee for complaining of sexual harassment.

37. An employee's complaint of sexual harassment does not have to ultimately prove to be true nor reveal underlying legally actionable harassment or discrimination. Instead, for an employee's complaint of sexual harassment/discrimination to receive legal protection the employee must have a good faith reasonable belief that discrimination/harassment was taking place.

38. Mr. Hernandez, in January and March 2023 complained, to Chief Schneck, of predatory behavior on Mr. Carlson's part that included Mr. Carlson staring at the behind of a female worker, Mr. Carlson improperly contacting the relatives of Mr. Hernandez and another co-worker, and Mr. Carlson making inappropriate sexual remarks. Conversely, Mr. Hernandez neither saw or was made

COMPLAINT AND DEMAND FOR JURY TRIAL- 10

aware of Mr. Carlson staring at the behinds of male employees, contacting the male relatives of co-workers, or saying inappropriate sexual remarks directed at men.

39. Mr. Hernandez provided context of his complaint against Mr. Carlson, and the department itself, by reporting that Mr. Carlson had prior harassment issues at the Wenatchee Police Department, that at least one officer had a scantily clad female ride along with him and then covered it up by hiding the ride-along paperwork, and that the Chief, himself, wanted Mr. Hernandez to be the School Resource Officer because "some of [his] officers could not keep their dicks in their pants."

40. An employer cannot retaliated against an employee for complaining of workplace discrimination/harassment and the City of Othello did just that by, including, (a) placing Mr. Hernandez on the *Brady* list, (b) sustaining the March 2022 use of force investigation against him, (c) giving him a subpar performance review, and (d) badmouthing him.

41. Causation is readily established because the City admits that Mr. Hernandez's sexual harassment complaint against Mr. Carlson was the reason he was caused to be place on the *Brady* list and the proximity in time between Mr. Hernandez's complaints and the escalating badmouthing, sustained use of force, and *Brady* list placement coupled with Chief Schenck's favoritism of Mr. Carlson

COMPLAINT AND DEMAND FOR JURY TRIAL- 11

in the investigative process is sufficient to show that Mr. Hernandez's complaint was "a but for cause" of the above-referenced retaliation.

42.     Defendant's actions caused Mr. Hernandez damage to be determined at trial.

**(CAUSE OF ACTION NO. 2 – VIOLATION OF RCW 49.60.210 - RETALIATION)**

43.     Much like Title VII, the WLAD makes it illegal for an employer to retaliate against any person who opposed a practice forbidden by RCW 49.60.030 and workplace harassment/discrimination is one such forbidden practice.

44.     Mr. Hernandez establishes a WLAD retaliation claim for the reasons stated above in the Title VII section but with two important caveats. First, under the WLAD Mr. Hernandez need only establish that his complaints of harassment/discrimination were a substantial factor causing the retaliation. Second, to receive front pay damages for a WLAD retaliation claim Mr. Hernandez does not have to prove constructive discharge.

45.      Defendant's actions caused Mr. Hernandez damage to be determined at trial.

**(CAUSE OF ACTION NO. 3 – VIOLATION OF 38 U.S.C. § 4311(c)(1) - DISCRIMINATION)**

46. Under 38 U.S.C. § 4311(c)(1) an employee's military obligation cannot serve as a motivating factor for an employer's decision that is adverse to that employee.

47. Mr. Hernandez was a member of the U.S. Armed Services.

48. Mr. Hernandez was mobilized with the Army National Guard and during that mobilization the City, knowing that Mr. Hernandez was gone and unable to compete for the Sergeant position, opened the Sergeant position and allowed others to apply and obtain that position.

49. When Mr. Hernandez returned and asked for opportunity to compete for the position he missed the City, through its agent, denied him the opportunity to compete for the Sergeant position.

50. The City's actions have caused Mr. Hernandez damages to be proven at trial.

### (CAUSE OF ACTION NO. 4 - VETERANS DISCRIMINATION - VIOLATION OF RCW 49.60.180)

51. Under the Washington Law Against Discrimination an employer cannot take an adverse action against an employee on, *inter alia,* account of that employee's military/veteran status.

COMPLAINT AND DEMAND FOR JURY TRIAL- 13

52. For the reasons stated above regarding Count 3, the City violated the WLAD by not allowing Mr. Hernandez opportunity to compete for Sergeant because of his military service.

53. The City's actions have caused Mr. Hernandez damages to be proven at trial.

### (CLAIM FOR LIQUIDATED DAMAGES – 38 U.S.C. § 4323)

54. Mr. Hernandez is entitled to liquidated damages under USERRA because the Defendant knew, or showed reckless disregard for whether its conduct was prohibited under USERRA.

55. To the extent that Defendant alleges application of any agreement that constitutes any limitation on Mr. Hernandez's rights under USERRA, it is illegal, null and void, inapplicable and of no force or effect pursuant to 38 U.S.C. § 4302.

### V.    PRAYER FOR RELIEF

Plaintiff respectfully prays for:

A. Compensation for all injury and damages suffered by Mr. Hernandez including, but not limited to, both economic and non-economic damages, in the amount to be proven at trial including back pay, front pay, pre and post judgment interest, lost benefits of employment, adverse tax consequences of any award for economic damages pursuant to Chapter RCW 49.60 et seq., liquidated damages

COMPLAINT AND DEMAND FOR JURY TRIAL- 14

under federal law for willful violations of USERRA and general damages relating to emotional distress and mental anguish damages as provided by law.

B.  Plaintiff's reasonable attorneys, expert fees, and costs, pursuant to USERRA, Title VII, the WLAD and as otherwise provided by law under RCW 49.48.030.

C.  For such other and further relief as this Court deems just and equitable.

Respectfully submitted this 17th day of April 2023.

/s Matthew Crotty
MATTHEW Z. CROTTY
MATTHEW A. MENSIK
Riverside Law Group, PLLC
905 West Riverside, Suite 404
Spokane, WA 99201
Telephone: 509.850.7011

Attorneys for Plaintiff

COMPLAINT AND DEMAND FOR JURY TRIAL- 15